IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| KIMBERLY GIBSON, | ) | CASE NO. 1:15-CV-832 |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | MAGISTRATE JUDGE |
| | ) | KENNETH S. McHARGH |
| | ) | |
| COMMISSIONER OF SOCIAL | ) | **MEMORANDUM** |
| SECURITY ADMINISTRATION, | ) | **OPINION & ORDER** |
| | ) | |
| Defendant. | ) | |

This case is before the Magistrate Judge pursuant to Local Rule 72.2(b).  The issue before the undersigned is whether the final decision of the Commissioner of Social Security ("Commissioner") denying Plaintiff Kimberly Gibson's ("Plaintiff" or "Gibson") application for Supplemental Security Income benefits under Title XVI of the Social Security Act, 42 U.S.C. § 1381 *et seq.*, is supported by substantial evidence and, therefore, conclusive.

For the reasons set forth below, the Magistrate Judge finds that the decision of the Commissioner be REVERSED and REMANDED.

**I.  PROCEDURAL HISTORY**

Plaintiff filed an application for Supplemental Security Income benefits on January 3, 2009, alleging disability beginning August 16, 1971. (Tr. 202).  The Social Security Administration denied Plaintiff's application on initial review, upon reconsideration, and by decision of Administrative Law Judge Traci M. Hixon ("ALJ") on September 21, 2011.  (Tr. 11, 124, 130).  Plaintiff requested review by the Appeals Council, who thereby remanded her case for further proceedings on April 26, 2013.  (*Id.*).

1

Another hearing was held before the ALJ on October 8, 2013. (Tr. 11, 31-68). Plaintiff, represented by counsel, appeared and testified before the ALJ, along with vocational expert (V.E.) Robert A. Mosley, Ph.D. (*Id.*). On November 29, 2013, the ALJ issued a decision finding Plaintiff was not disabled. (Tr. 11-21). After applying the five-step sequential analysis,[1] the ALJ determined Plaintiff retained the ability to perform work existing in significant numbers in the national economy. (*Id.*). Subsequently, Plaintiff again requested review of the ALJ's decision from the Appeals Council. (Tr. 6). The Appeals Council denied her request for review, making the ALJ's November 29, 2013, determination the final decision of the Commissioner. (Tr. 1-3). Plaintiff now seeks judicial review of the ALJ's final decision pursuant to 42 U.S.C. §§ 405(g) and 1383(c).

## II. EVIDENCE

### A. Personal and Vocational Evidence

---

[1] The Social Security Administration regulations require an ALJ to follow a five-step sequential analysis in making a determination as to "disability." *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The Sixth Circuit has summarized the five steps as follows:

    (1)    If a claimant is doing substantial gainful activity–i.e., working for profit–she is not disabled.

    (2)    If a claimant is not doing substantial gainful activity, her impairment must be severe before she can be found to be disabled.

    (3)    If a claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and her impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.

    (4)    If a claimant's impairment does not prevent her from doing her past relevant work, she is not disabled.

    (5)    Even if a claimant's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that accommodates her residual functional capacity and vocational factors (age, education, skills, etc.), she is not disabled.

*Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990); *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001).

Plaintiff was born on August 15, 1964,[2] and was 44-years-old on the date of application (Tr. 20, 202). Plaintiff was thus considered a "younger person" for Social Security purposes. *See* 20 C.F.R. §§ 404.1563(c), 416.963(c). Plaintiff dropped out during the tenth grade but subsequently obtained her GED. (Tr. 36). Plaintiff previously worked as a laborer for a gas company and plastic manufacturer in 1995, and does not have a driver's license. (Tr. 35-36, 226).

**B. Medical Evidence[3]**

The record includes treatment notes and objective medical evidence relating to Plaintiff's physical impairments, predominantly caused by degenerative disc disease of the lumbar spine, osteoarthritis in her right toe and left knee, chronic obstructive pulmonary disease (COPD), and bilateral leg edema. (Tr. 13, 424-26, 434-35, 594, 673, 702, 876). However, Plaintiff's objections relate only to the ALJ's analysis of her mental conditions and limitations (including the impact of Plaintiff's pain and medication on her mental impairments). Thus, this summary of medical evidence focuses on the mental health evidence of record, while including reference to all relevant health records.

Sana Abumeri, M.D. noted in February of 2009 that Plaintiff was treated for bipolar and anxiety disorders at the Nord Center, under the care of Dr. Rao. (Tr. 350). Plaintiff stated she sought mental health treatment from Nord Center since 1990, seeing various counselors, as well as K. Rao, M.D., a psychiatrist, for treatment and prescriptions. (Tr. 491, 724-864). A diagnostic assessment update performed in July of 2011 indicated Plaintiff suffered from bipolar

---

[2] It is noted that Plaintiff's application, as well as the ALJ's decision, indicate Plaintiff's date of birth as August 15, 1964; however, at the hearing Plaintiff stated her date of birth was August 16, 1964. (Tr. 20, 35, 202). This does not change her classification as a "younger individual" for purposes of her application for benefits.
[3] The following recital of Plaintiff's medical record is an overview of the medical evidence pertinent to Plaintiff's appeal. It is not intended to reflect all of the medical evidence of record.

I disorder, most recent mixed and panic disorder without agoraphobia, with a GAF score of 50. (Tr. 831-34). Counseling notes dated from October 2010 through April 2013 showed Plaintiff complained of being depressed with disorganized thoughts, suffered from panic attacks, and feeling hopeless, helpless, and worthless. (Tr. 735-837). However, notes also showed Plaintiff sometimes reported she was doing well, exhibited good moods (stating some days were good and others bad), and had some decrease in symptoms while undergoing treatment at Nord Center. (Tr. 536, 542, 550-52, 554, 565, 567, 824, 843, 845, 852). Counseling notes also indicated Plaintiff reported increased symptoms of depression when experiencing physical pain, as well as instances of mood swings, anxiety (with some panic attacks), and general symptoms of depression and hypermania. (Tr. 524, 549, 555, 565, 568, 784, 791, 807, 819, 824, 847).

The records indicate Plaintiff was regularly seen by Dr. Rao from 2009 through 2013, although his report stated he treated her since 2006. (Tr. 524, 549, 555, 560, 565, 568, 670). During these examinations, Dr. Rao noted some distress due to physical ailments, and examination notes indicated reports of occasional mood swings and periods of anxiety (with some reported panic attacks), a low threshold for stress, but generally controlled (but sometimes recurring but moderate) symptoms of depression or hypermania. (Tr. 524, 549, 555, 565, 568, 784, 791, 807, 819, 847). Throughout her treatment, Dr. Rao prescribed mood disorder, antidepressant, and anti-anxiety medications. (Tr. 724, 784, 791, 800, 807, 808, 813, 816, 819, 827, 847, 858, 863).

On February 24, 2011, Dr. Rao completed a medical source statement and found Plaintiff exhibited the following mental limitations: a slight[4] limitation in her ability to understand,

---

[4] "Slight" was defined by the form as indicating mild limitation in an area, but that an individual can generally function well.

4

remember, and carry out instructions in two out of five areas, with moderate[5] limitations in the remaining three areas; moderate limitations in three of five areas relating to her ability to respond appropriately to supervision, coworkers, and work pressures, but marked[6] limitations in the remaining two areas. (Tr. 670-71). Further, Dr. Rao opined Plaintiff had moderate limitations in her activities of daily living and social functioning, would be frequently off task, and would have continual episodes of deterioration or decompensation in a work setting. (Tr. 671). Dr. Rao assigned Plaintiff a GAF score of 50. (Tr. 672). In support of his findings, Dr. Rao did not point to any specific medical records, but noted Plaintiff has difficulty concentrating and had some degree of anxiety and low grade mood swings (despite treatment) that made her "unable to function well." (Tr. 670-71). Further, he opined Plaintiff had an "inability to deal with day to day stresses" due to a low threshold for stress caused by her anxiety. (Tr. 671).

On April 20, 2009, state agency psychiatrist David Demuth, M.D., reviewed Plaintiff's medical records and assessed her mental limitations. (Tr. 391-93). Dr. Demuth determined Plaintiff had moderate limitations with no episodes of decompensation. (Tr. 387, 391-92). He further opined Plaintiff retained the ability to concentrate on, understand, remember, and carry out routine, repetitive instructions at an adequate persistence and pace, and could handle stress and pressures associated with routine and repetitive work, although noting a reduced ability in general to handle work place stresses and pressure. (Tr. 393). Dr. Demuth also limited Plaintiff to only brief and superficial contact with co-workers and the public, but could have ordinary levels of supervision. (*Id.*). A state agency consulting psychologist, Mel Zwissler, Ph.D., reviewed Plaintiff's record on January 9, 2010, and also found moderate limitations and no

---

[5] "Moderate/often" indicated moderate limitation in an area, but that an individual can still function satisfactorily.
[6] "Marked/frequent" indicated serious limitations in an area, but that an individual is not precluded entirely from an activity. The form further allowed for a finding of "extreme/constant/continual" which was applicable for a major limitation in an area with no useful ability to function.

5

episodes of decompensation. (Tr. 505, 509-11). Dr. Zwissler opined Plaintiff could interact and relate to others appropriately on a superficial and infrequent basis, as well as understand and follow simple instructions and maintain attention, concentration, pace, and persistence for simple and routine tasks, but that she should avoid work involving high demands or strict production quotas. (Tr. 511).

Plaintiff underwent a state agency consultative psychiatric assessment on December 10, 2009, with psychologist Ronald Smith, Ph.D. (Tr. 489-94). Plaintiff reported to Dr. Smith that she experienced manic periods causing mean behavior, slept a total of eighteen hours per day, and had been on and off medications for years. (Tr. 491). Dr. Smith noted Plaintiff's daily activities included getting her daughter to school, preparing meals, doing laundry, and washing dishes. (Tr. 493). On examination, Dr. Smith observed Plaintiff appeared clean and was cooperative, exhibited clear speech, appropriate affect, and good insight and judgment. (Tr. 492-93). However, he noted that she seemed sad and exhibited some tearfulness throughout the interview, and she spoke without much energy. (Tr. 492). Plaintiff denied suicidal and homicidal ideation, as well as hallucinations, and Dr. Smith diagnosed her with bipolar II disorder, current episode depressed, and assigned a GAF score of 48, indicating serious symptoms. (Tr. 492-93). Dr. Smith found Plaintiff had no impairment in her abilities to understand, remember, and follow instructions, but was moderately impaired in her abilities to relate to others in a work situation, maintain attention, concentration, and persistence to perform routine tasks, and to withstand the stress and pressure of day-to-day work activity. (Tr. 494).

### C. Plaintiff's Testimony

At the October 8, 2013 hearing, Plaintiff testified that she lost her driver's license for driving without insurance, and is now afraid to drive because she did not think her reactions

would be fast enough. (Tr. 35-36). Plaintiff reported she lives with her 17-year-old daughter, 18-month-old granddaughter, and her daughter's boyfriend, and performs some household chores with the help of her daughter. (Tr. 35-38). Plaintiff testified she needs reminders to maintain personal hygiene, sometimes going two weeks without showering or brushing her hair, that she listens to music, plays computer games, and plays with her granddaughter, but that she will sometimes stay awake all night and then sleep for two days straight. (Tr. 39-41). Further, she testified family will visit on holidays, and that she babysits for her granddaughter. (Tr. 40). Regarding her allegations that she is unable to work, Plaintiff testified that she has physical limitations due to back, hip, and lower extremity problems, including significant pain, and explained she took a variety of medications (with some side effects) over the course of her treatment for both physical and mental problems. (Tr. 43-48, 52-54). Regarding her mental impairments, Plaintiff testified she has significant mood swings, ranging from being a screaming and crying "monster" and being extremely depressed, to extremely happy, and being unable at times to even face people in her own home, but stating that medication helps. (Tr. 49-51). Further, Plaintiff testified she gets nervous and panicky in crowds, has trouble remembering appointments, and can play about four games on her computer before becoming distracted. (Tr. 59).

### III. SUMMARY OF THE ALJ'S DECISION

The ALJ made the following findings of fact and conclusions of law:

1. The claimant has not engaged in substantial gainful activity since January 30, 2009, the application date.

2. The claimant has the following severe impairments: degenerative disc disease of the lumbar spine, osteoarthritis of the right first toe, osteoarthritis of the left knee, chronic obstructive pulmonary disease (COPD), bilateral leg edema, bipolar disorder, and anxiety disorder.

7

3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

4. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work with lifting up to 20 pounds occasionally and 10 pounds frequently, standing and walking for six hours a day, sitting for six hours a day, with sit/stand option every hour for five minutes. She would not leave the work station. Claimant can climb stairs/ramps but not ladders and ropes, can balance, frequently kneel and crawl, occasionally stoop and crouch, can reach in all directions, can handle, finger and feel. She should not be exposed to concentrated levels of pulmonary irritants or hazardous conditions. The claimant is limited to simple, routine tasks with simple short instructions, making simple decisions, and having few workplace changes. The claimant is limited to superficial interaction with coworkers, supervisors, and the public. Superficial is defined as having no confrontation, negotiation or arbitration.

5. The claimant has no past relevant work.

6. The claimant was born on August 15, 1964 and was 44 years old, which is defined as a younger individual age 18-49, on the date the application was filed.

7. The claimant has at least a high school education and is able to communicate in English.

8. Transferability of job skills is not an issue because the claimant does not have past relevant work.

9. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

10. The claimant has not been under a disability, as defined in the Social Security Act, since January 30, 2009, the date the application was filed.

(Tr. 13-21) (internal citations omitted).

## IV. DISABILITY STANDARD

A claimant is entitled to receive Disability Insurance and/or Supplemental Security Income benefits only when she establishes disability within the meaning of the Social Security Act. *See* 42 U.S.C. §§ 423, 1381. A claimant is considered disabled when she cannot perform "substantial gainful employment by reason of any medically determinable physical or mental

impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve (12) months." *See* 20 C.F.R. §§ 404.1505, 416.905.

## V. STANDARD OF REVIEW

Judicial review of the Commissioner's benefits decision is limited to a determination of whether, based on the record as a whole, the Commissioner's decision is supported by substantial evidence, and whether, in making that decision, the Commissioner employed the proper legal standards. *See Cunningham v. Apfel*, 12 F. App'x. 361, 362 (6th Cir. 2001); *Garner*, 745 F.2d at 387; *Richardson v. Perales*, 402 U.S. 389, 401 (1971). "Substantial evidence" has been defined as more than a scintilla of evidence but less than a preponderance of the evidence. *See Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981). Thus, if the record evidence is of such a nature that a reasonable mind might accept it as adequate support for the Commissioner's final benefits determination, then that determination must be affirmed. *Id.* The Commissioner's determination must stand if supported by substantial evidence, regardless of whether this Court would resolve the issues of fact in dispute differently or substantial evidence also supports the opposite conclusion. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983). This Court may not try the case de novo, resolve conflicts in the evidence, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). However, it may examine all the evidence in the record in making its decision, regardless of whether such evidence was cited in the Commissioner's final decision. *See Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989).

## IV. ANALYSIS

### A. Treating Physician Analysis

9

Plaintiff argues that the ALJ violated the treating physician rule with respect to Dr. Rao, her treating psychiatrist. The record includes treatment notes from Dr. Rao dating from 2009 to 2013, as well as a medical source statement dated January 31, 2011.  (Tr. 524, 549, 555, 560, 565, 568, 670, 784, 791, 807, 819, 847). In determining Plaintiff's RFC, the ALJ gave only "some weight" to Dr. Rao's opinion, adopting his findings of generally moderate limitations, while rejecting the portion of his opinion finding more serious limitations. (Tr. 18-19). The parties do not dispute Dr. Rao's status as a treating physician.

It is well-established that the ALJ must afford special attention to findings of a claimant's treating source. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). This doctrine, known as the "treating source rule" reflects the Social Security Administration's awareness that physicians who have a long-standing treating relationship with an individual are best equipped to provide a complete picture of the individual's health and treatment history. *Id*.; 20 C.F.R. §§ 416.927(c)(2), 404.1527(c)(2). The treating source rule dictates that opinions from treating physicians are given controlling weight if the opinion is both "well-supported by medically acceptable clinical and laboratory diagnostic techniques," and "consistent with the other substantial evidence in the case record." *Wilson*, 378 F.3d at 544.

When a treating source's opinion is not entitled to controlling weight, the ALJ is required to establish the weight given to the opinion by applying factors found in the governing regulations. 20 C.F.R. §§ 416.927(c)(1)-(6), 404.1527(c)(1)-(6). These factors include: (1) the examining relationship; (2) the treatment relationship; (3) the length of treatment and frequency of examination; (4) the opinion's supportability and consistency; (5) the source's specialization; and (6) any other factors tending to support or contradict the opinion. *Id*. The regulations further require the ALJ to provide "good reasons" for the weight ultimately given to the opinion. *See*

*Wilson*, 378 F.3d at 544 (*quoting* S.S.R. 96-2p, 1996 WL 374188 at *5). The reasons must be sufficiently specific to make clear to any subsequent reviewers the weight given to the treating physician's opinions and the reasons for that weight. *Id.*

The Sixth Circuit emphasized in *Gayheart v. Commissioner of Social Security* that the above standard requires two distinct analyses when assessing the treating source's opinion. *Gayheart*, 710 F.3d 365, 375-77; *Aiello-Zak v. Comm'r of Soc. Sec.*, 47 F. Supp. 3d 550, 555 (N.D. Ohio 2014). First, the ALJ must determine whether a treating source's medical opinion is entitled to controlling weight. *Gayheart*, 710 F.3d at 376. Under this first step, the ALJ must consider whether the opinion is (1) well-supported by clinical and laboratory diagnostic techniques, and (2) consistent with other substantial evidence. *Id.* at 376. If the ALJ determines the treating physician's opinion is not entitled to controlling weight, she must then specify the weight given that opinion, based on consideration of the factors outlined in the regulations. *Id.* ("[T]hese factors are properly applied only after the ALJ has determined that a treating-source opinion will not be given controlling weight."). However, the text of the regulations guiding the ALJ's review of a claimant's treating source opinions only requires the ALJ to "consider" the factors set forth when making his decision. 20 C.F.R. §§ 416.927, 404.1527. A factor-by-factor analysis is not required so long as the ALJ's decision clearly conveys why the opinion was credited or rejected. *See Francis v. Comm'r of Soc. Sec.*, 414 F. App'x 802, 804 (6th Cir. 2011). ("Although the regulations instruct an ALJ to consider these factors, they expressly require only that the ALJ's decision include 'good reasons…for the weight…give[n] [to the] treating source's opinion' …Procedurally, the regulations require no more.") (omitted text indicated in original).

Courts have established that an erroneous treating source analysis may not, in some circumstances, automatically require remand where the substantive aspects of the standard are

met, supported by good reasons that are discernible from the opinion. For instance, remand may not be necessary where an ALJ fails to "strictly follow the *Gayheart* template, as long as the ALJ adequately addresses the required factors and articulates good reasons for discounting the treating source's opinion. *Aiello-Zak*, 47 F. Supp. 3d at 558 (*citing Dyer v. Soc. Sec. Admin*, 568 F. App'x 422 (6th Cir. 2014)). See *Cox v. Comm'r of Soc. Sec.*, 5:14 CV 2233, 2015 WL 6545657, *8 (N.D. Ohio Oct. 27, 2015) (rejecting plaintiff's argument that the ALJ's treating physician analysis failed because he "telescop[ed] the two-step analysis" provided by *Gayheart*, finding it sufficient that the ALJ reasoned in the analysis that the opinion was not consistent with other evidence); *see Aiello-Zak*, 47 F. Supp. 3d at 558-59 (finding treating source analysis sufficient where ALJ carefully summarized the results of the claimant's objective medical records, noted his daily activities, and explained why the treating source's opinion was inconsistent with these facts). Further, citing *Wilson*, the Sixth Circuit has held:

> [T]he good reason requirement does not require conformity at all times. Violation of the rule constitutes harmless error if the ALJ has met the goals of the procedural requirement—to ensure adequacy of review and to permit the claimant to understand the disposition of his case—even though he failed to comply with the regulations terms. An ALJ may accomplish the goals of this procedural requirement by indirectly attacking the supportability of the treating physician's opinion or its consistency with other evidence in the record.

*Coldiron v. Comm'r of Soc. Sec.*, 391 Fed. App'x 435, 440 (6th Cir. 2010) (internal citations omitted). The *Coldiron* court went on to explain that "courts look to the ALJ's decision itself, and not other evidence in the record, for this support." *Id.*

      Here, the undersigned finds the ALJ's analysis of Dr. Rao's opinion falls short, as her conclusions are not supported by sufficiently specific, "good reasons," as required under the treating source standard. In her assessment of Dr. Rao's opinion, the ALJ recognized Dr. Rao as Plaintiff's treating psychiatrist and, although she does not specifically articulate this step of the

*Gayheart* analysis, makes clear that she found part of his opinion not supported by the evidence, and was thus not entitled to controlling weight. (Tr. 19). However, in support, she provided a general, non-specific statement that the objective evidence in the record established only moderate limitations. She then cited *only* to Dr. Rao's medical source statement, and makes no reference to any other evidence of record in relation to Dr. Rao's opinion. Further, the ALJ's citation to nothing more than the exhibit number for Dr. Rao's medical source statement is insufficient to provide the "reasons or basis" for her conclusion, as the opinion contains evidence of both moderate and more serious limitations. (Tr. 19). See *Burbridge v. Comm'r of Soc. Sec.*, 572 Fed. App'x 412, 416 (6th Cir. 2014) (finding general cite to exhibit number insufficient where exhibit contained support for different conclusion as to material issue).

The ALJ's analysis additionally does not properly discuss evidence that exists in the record that could undermine her finding of only moderate limitations. "In rendering his RFC decision, the ALJ must give some indication of the evidence upon which he is relying, and he may not ignore evidence that does not support his decision, especially when that evidence, if accepted, would change his analysis." *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 881(N.D. Ohio 2011) (*citing Bryan v. Comm'r of Soc. Sec.*, 383 Fed. App'x 140, 148 (3d Cir. 2010) (*quoting Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 121 (3d Cir. 2000) ("The ALJ has an obligation to 'consider all evidence before him' when he 'mak[es] a residual functional capacity determination,' and must also 'mention or refute […] contradictory, objective medical evidence' presented to him.")). Although it is up to the ALJ to weigh the evidence, he cannot merely disregard evidence that is contrary to his view. *Id*. Rather, the ALJ must explain the evidence considered in a way that allows a subsequent reviewer to know why evidence was valued or rejected. See *id.*

Contrary to this requirement, the ALJ determined the serious limitations presented by Dr. Rao were inconsistent with his own treatment notes, but then failed to discuss anywhere in her opinion the content of these notes, or point to specific inconsistencies.   Indeed, review of Dr. Rao's notes over the course of Plaintiff's treatment show both periods with diminished symptoms, as well as evidence that could support more serious limitations, including times where Plaintiff suffered from mood swings, anxiety (with some panic attacks), a diminished capacity to handle stress, and symptoms of depression and hypermania. (Tr. 524, 549, 555, 565, 568, 784, 791, 807, 819, 847).   Additionally, the ALJ failed to acknowledge Dr. Rao's handwritten comments in the medical source statement in support of his opinion of both moderate and more serious limitation, specifically that Plaintiff has difficulty concentrating and anxiety, despite treatment,  making her "unable to function well," and causing an "inability to deal with day to day stress."  (Tr. 670-71).  Due to the ALJ's failure to fully discuss Dr. Rao's notes, and account for the evidence that could support more serious limitations, this Court cannot accept her claimed inconsistencies as a "good reason" for discrediting the opinion of Plaintiff's treating source.   See *Orick v. Astrue*, No. 1:10-cv-871, 2012 WL 511324, *5 (S.D. Ohio Feb. 15, 2012) (finding ALJ's analysis failed under treating source rule where he did not discuss treating source's notes in any meaningful way, ruling "when an ALJ fails to mention relevant evidence in his or her decision, 'the reviewing court cannot tell if significant probative evidence was not credited or simply ignored.'") (*quoting* *Morris v. Sec. of Health & Human Servs.*, No. 86-5875, 1988 WL 34109, at *2 (6th Cir. Apr. 18, 1988)).

As it is permeated with similar flaws to those found within the analysis of Dr. Rao's opinion, the ALJ's decision, read in its entirety, does not provide sufficient explanation to save the decision from remand.   See *Coldiron*, 391 Fed. App'x at 440; *see* *Friend v. Comm'r of Soc.*

*Sec.*, 375 Fed. App'x 543, 550 (6th Cir. 2010) ("the procedural protections at the heart of the [treating source] rule may be met when the 'supportability' of a doctor's opinion, or its consistency with other evidence in the record, is *indirectly* attacked via an ALJ's analysis of a physician's other opinions or his analysis of the claimant's ailments.") (*citing Nelson v. Comm'r of Soc. Sec.*, 195 F. App'x 462, 470-72 (6th Cir. 2006) and *Hall v. Comm'r of Soc. Sec.*, 148 F. App'x 456, 464 (6th Cir. 2006))*. The undersigned acknowledges that, prior to her analysis of Dr. Rao's opinion, the ALJ points specifically to evidence supporting a finding of moderate limitations, including the opinions of consultative examiner Dr. Smith and state agency reviewers Dr. Demuth and Dr. Zwissler, as well as treatment notes from the Nord Center showing times when Plaintiff was "doing well." (Tr. 18). However, she again neglects to account for other treatment notes from Nord containing notes and opinions that could arguably support more serious limitations. (Exs. 20F, 31F, 32F); *see Fleischer*, 774 F. Supp. 2d at 881. Specifically, the ALJ points to only two instances over years of treatment where Nord notes indicated she was "feeling good," and does not discuss other treatment notes documenting reports of uncontrolled mood swings, periods of ongoing depression over the course of treatment (as recently as January 2013), periods of heightened anxiety and increased panic attacks, as well as documentation of medication adjustments to deal with continuing or heightened symptoms. (Tr. 525, 725, 728, 746, 748, 751). This lack of explanation further undermines the ALJ's non-specific conclusion that these records are inconsistent with Dr. Rao's opinion, and the undersigned is not persuaded by the government's *post hoc* attempt in its brief to clarify what the ALJ might have considered inconsistent between Dr. Rao's opinion and the record, as the ALJ's reasons must be apparent from the language of the decision. *See Keeton v. Comm'r of Soc. Sec.*, 583 Fed. App'x 515, 524 (6th Cir. 2014) ("In reviewing an ALJ's findings and conclusions, this

15

Court shall not 'accept appellate counsel's *post hoc* rationalization for agency action in lieu of [accurate] reasons and findings enunciated by the Board.") (internal page numbers omitted).

Further, the undersigned finds the ALJ inappropriately relied on the opinions of state agency consultants to undermine the more serious limitations found by Dr. Rao. (Tr. 18-19). The Sixth Circuit has established that the opinions of state agency consultants "may be entitled to greater weight than the opinions of treating or examining sources…when the '[s]tate agency medical…consultant's opinion is based on a review of a complete case record that…provides more detailed and comprehensive information than what was available to the individual's treating source.'" *Blakely v. Comm'r of Soc. Sec.*, 581 F.3d 399, 409 (6th Cir. 2009). Here, the ALJ assessed the opinions of Dr. Smith, Dr. Demuth, and Dr. Zwissler, and found they all supported only moderate limitations, and thus were not consistent with Dr. Rao's "marked" limitations and episodes of decompensation. However, the consultants rendered their opinions more than a year *before* Dr. Rao completed his medical source statement (in 2010 and early 2011), and thus did not have the opportunity to review subsequent treatment notes of Dr. Rao or from later Nord Center sessions before finalizing their opinions. Further, her conclusion that the consultants found no more than moderate limitations is not a "good reason" to discredit Dr. Rao's conclusion that Plaintiff exhibited more severe limitations, because the ALJ failed to properly establish that Dr. Rao's opinion is not supported by the other evidence of record (as discussed more thoroughly above). *See Gayheart*, 710 F.3d at 376 ("conflicting substantial evidence must consist of more than the medical opinions of the nontreating and nonexamining doctors.").

Thus, the ALJ's reasons for giving only "some weight" to Plaintiff's treating psychiatrist do not "permit[] the claimant and [the] reviewing court a clear understanding of the reasons for

the weight given" to Dr. Rao's opinion. *Francis*, 414 F. App'x at 805. Further, the potential prejudice of the error is apparent, as Dr. Rao's opinion, if fully credited, offers marked limitations and episodes of decompensation that would require, at a minimum, further limitations to Plaintiff's RFC, and could even require a finding that Plaintiff meets a Listing at step three, automatically rendering her disabled. Accordingly, remand is required for the ALJ to properly analyze the opinion of Dr. Rao under the established treating source rule. On remand, the ALJ is instructed to consider all of the evidence of record, and clearly articulate, based on specific citations to the record, her reasons for the weight afforded to Dr. Rao's opinion, as well as those of any other qualified medical sources.

### B. **Plaintiff's Credibility**

Plaintiff also alleges that the ALJ failed to properly evaluate his credibility. Generally, "[a]n ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since [the] ALJ is charged with the duty of observing a witness's demeanor and credibility." *Vance v. Comm'r of Soc. Sec.*, 260 F. App'x 801, 806 (6th Cir. 2008) (*citing Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997)). Notwithstanding, the ALJ's credibility finding must be supported by substantial evidence, *Walters*, 127 F.3d at 531, as the ALJ is "not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007) (*quoting* S.S.R. 96-7p, 1996 WL 374186, at *4).

The Sixth Circuit follows a two-step process in the evaluation of a claimant's subjective complaints of disabling pain. 20 C.F.R. §§ 404.1529, 416.929; *Felisky v. Bowen*, 35 F.3d 1027, 1039-40 (6th Cir. 1994). First, the ALJ must determine whether the claimant has an underlying medically determinable impairment which could reasonably be expected to produce the

17

claimant's symptoms. *Rogers*, 486 F.3d at 247. Second, if such an impairment exists, then the ALJ must evaluate the intensity, persistence and limiting effects of the symptoms on the claimant's ability to work. *Id.* The ALJ should consider the following factors in evaluating the claimant's symptoms: the claimant's daily activities; the location, duration, frequency and intensity of the claimant's symptoms; any precipitating or aggravating factors; the type, dosage, effectiveness and side effects of any medication taken to alleviate the symptoms; treatment, other than medication, the claimant receives to relieve the pain; measures used by the claimant to relieve the symptoms; and statements from the claimant and the claimant's treating and examining physicians. *Id.*; *see Felisky*, 35 F.3d at 1039-40; S.S.R. 96-7p, 1996 WL 374186 (July 2, 1996).

      The undersigned finds the ALJ's credibility assessment is not supported by substantial evidence. Taking into account Plaintiff''s testimony, the record evidence, and applicable factors for evaluating credibility, the ALJ concluded that Plaintiff's medically determinable impairments could cause her alleged symptoms, but that her statements as to the intensity and limiting effects of her symptoms were not entirely credible. (Tr. 18). With respect to Plaintiff's mental limitations, the ALJ provided no more explanation than to state "the evidence indicates that she is moderately impaired," and cited generally to Exhibits 14F (the opinion of one-time examining consultant Dr. Smith) and 25F (the medical source statement of Dr. Rao). *Id.* Although the undersigned recognizes that the ALJ's decision, in its entirety, provides some discussion of the medical evidence as well as other evidence of record, including assessment of Plaintiff's activities of daily living at step three, her reason for discrediting Plaintiff is undermined by her flawed analysis of the medical evidence, as demonstrated in the preceding section. Accordingly, because the ALJ did not conduct a proper analysis of the medical evidence in reaching her

conclusion that the evidence supports no more than moderate impairments, this cannot reasonably support the ALJ's finding that Plaintiff's statements are not credible.  *See Rogers, 486 F.3d at 249* ("[W]hile credibility determinations regarding subjective complaints rest with the ALJ, those determinations must be reasonable and supported by substantial evidence."). Because remand is appropriate for the ALJ to address the treating source analysis, the ALJ will have the opportunity to remedy any flaws that might exist with regard to credibility.

## VII. DECISION

For the foregoing reasons, the Magistrate Judge finds that the decision of the Commissioner is not supported by substantial evidence.  Accordingly, the Court VACATES the decision of the Commissioner and REMANDS the case for further proceedings.

IT IS SO ORDERED.

s/ Kenneth S. McHargh
Kenneth S. McHargh
United States Magistrate Judge

Date:  July 25, 2016.